BATTIS and others vs. HAMLIN.

1. Chap. 215, Laws of 1860, authorizes a proceeding by attachment in justice's court, not only in case of a lien for services upon "logs or timber," but in any case of a lien upon personal property, to the amount limited.
2. Where a lawful writ directed the officer to attach specific chattels, he is not liable to an action for having seized them; nor can replevin be maintained against him for them.
3. In replevin against the officer, his recovery, if a return cannot be had, is limited to the value of his special interest in the property, which, before judgment in the attachment suit, must be taken to be the sum specified in the writ, with interest, and the probable costs of such suit.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin, for a lot of shingles. Answer: that, on etc., one Patrick McKane filed in the office of the clerk of the city of Oskosh, his petition for a lien on a certain lot of shingles (described by their mark), for $30.75, alleged to be due from F. Watson and H. F. Garfield for labor performed in cutting the same (partly by himself and in part by others named who had assigned their claims to him); that an action was brought before one Forbes, a justice of the peace, to enforce said lien; that McKane filed with said justice the affidavit required by law in such cases (a copy of which was annexed); that a writ of attachment was issued by said justice, commanding the defendant, who was a constable, to attach the shingles above referred to, being the same described in the complaint, and so provide that the same might be subject to further proceedings, etc., by virtue of which writ he seized the same; and he demanded judgment for their return, or for the amount of the claim of said McKane and the costs in the proceedings before said justice.* On

---

* Sec. 1 of ch. 215 is as follows: "Any person, company or corporation that may do or perform any labor or services in cutting, falling, hauling,

the trial, the plaintiffs proved ownership of the shingles, and their value. The defendant gave in evidence the affidavit and attachment mentioned in the answer, which were admitted against plaintiffs' objection; and testified that the shingles in dispute were the same described in his writ, and that he seized and held them by virtue thereof. The plaintiffs then offered to show, that McKane, the plaintiff in the attachment, never performed any work upon the shingles in dispute; that he was never employed by the plaintiffs; that the shingles were made for the plaintiffs by said Frank Watson and H. F. Garfield, at so much per $M$; and that the plaintiffs paid them in full for making them, before they had any notice that said Watson and Garfield were indebted to said McKane; but the evidence was excluded. The court instructed the jury, that the justice had jurisdiction of the attachment suit; that the writ was a protection to the defendant; and that if they found for him, they should find that he had a special interest in the property to the amount claimed in the affidavit and writ of attachment. The jury

driving, running, rafting, booming, cribbing, or towing any logs or timber in the counties of Shawano [and several others named] or upon the waters of Lake Winnebago, shall have a lien thereon for the amount due for such labor or services, and the same shall take precedence of all other claims thereon." The next six sections direct when and where the petitions for liens shall be filed, what affidavits shall be required before issuing attachments to enforce liens, and how the suits shall be prosecuted, and that no attachment shall issue from a circuit or county court under the act, unless the amount stated in the affidavit, as due above all set-offs, shall be $100 or upwards. The 8th section (so far as material in this case) is as follows: " Justices of the peace, within their respective counties, shall have cognizance and jurisdiction of all cases arising under this act (and of any case for a lien upon or against personal property) when the debt or demand claimed shall not exceed the jurisdiction of a justice of the peace. And any person or company or corporation having any such lien, and the amount thereof being within the jurisdiction of a justice's court, shall be entitled to proceed by attachment in a justice's court against the property upon which he has such lien," etc.—Rep.

found that the defendant was entitled to a return of the property, and had a special interest in it to the amount of $30.75. Judgment accordingly; and plaintiffs appealed.

*Gabe Bouck,* for appellants, contended: 1. That the jurisdiction given to justices of the peace by chap. 215, Laws of 1860, for the enforcement of liens, was confined to cases of labor upon "logs or timber," and did not extend to any other lien "upon or against personal property." 2. The mere showing of a writ which is a protection to the officer, entitles him only to nominal damages; if he asks for more, he must show that he is entitled to it. 20 Wis., 21. The court erred in instructing the jury that they should find the officer's special interest to be the amount claimed in the attachment; because, (1.) The law gives a lien upon timber only when the work is performed for the owner, his agent, or the consignee thereof. (2.) All of the plaintiff's claim for his own work was $10. As assignee he had no lien; a lien is a personal right not transferable. 10 Wis., 331. Ch. 113, Laws of 1859, allowing assignment of liens, extends only to liens on "dwelling houses, building or machinery." The assignment authorized in sec. 20, ch. 215, extends only to liens upon logs and timber. (3.) The affidavit in the attachment gave authority to issue the writ (if there was jurisdiction), but it was not evidence of indebtedness; and the defendant in this case, in order to show the amount of his special interest, should have proven the indebtedness, and that it was a lien. 14 Wis., 88. 3. The court erred in refusing the appellants permission to show that McKane had never performed any labor upon the property in dispute, etc. The evidence went only to the question what special interest the officer had, if any, in the property.

*Jackson & Halsey,* for respondent.

DIXON, C. J. The words of section 8, chap. 215, Laws of

1860, taken in their ordinary grammatical sense, not only confer upon justices of the peace jurisdiction of every case for a lien upon or against personal property, when the amount in controversy does not exceed the sum over which justices of the peace have jurisdiction in other cases, but they plainly extend the remedy prescribed by that and the three succeeding sections to every such case, whether it be to enforce a lien upon " logs and timber," especially provided for by that chapter, or for a lien upon other personal property elsewhere given by law. The words " *any such lien,*" in the second sentence of the section, refer as clearly to a lien upon other personal property as to one upon " logs or timber." In their ordinary grammatical sense, they include every lien the case for which is declared to be within the jurisdiction of a justice of the peace. The correct rule in the construction of statutes, as well as other instruments, is, to take the words in their ordinary grammatical sense, unless such construction would be obviously repugnant to the intention of the framers, or would lead to some other inconvenience or absurdity. *Jones v. Harrison,* 6 Exch., 332; *Waller v. Harris,* 20 Wend., 562. BRONSON, J., in the last case, says that the current of authority at the present day is in favor of reading statutes according to the natural and most obvious import of the language, without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation. Courts cannot correct what they may deem either excesses or omissions in legislation, nor relieve against the occasionally harsh operation of statutory provisions, without danger of doing vastly more mischief than good. A careful examination of the act fails to convince us that to construe it according to the natural and plain import of the language would be obviously contrary to the intention of the legislature, or that it would lead to any other absurdity or inconvenience. On the other hand, the

opposite construction—that which would limit the remedy given by these sections to cases of liens on " logs or timber" —would lead to this obvious absurdity, that there would be conferred upon justices of the peace jurisdiction of cases for liens upon other personal property, with no means whatever provided by which that jurisdiction was to be exercised. The remedy given by the general lien law (R. S., ch. 153), by petition or action in the county or circuit courts, is clearly inapplicable to justices' courts.     Justices' courts being courts of inferior jurisdiction, taking no power by implication, but only such powers as are expressly conferred, and being required to have jurisdiction of the process as well as of the subject matter of the action, it would follow that they could not adopt the remedy by petition and action authorized in the county and circuit courts; and the result would be a jurisdiction given as to the subject matter of an action, with no process by which such jurisdiction could be carried into effect.    We cannot so construe the act, but must rather be governed by another familiar rule, likewise applicable, which is, that such construction should be given as will, if possible, give effect to every part of the statute.    We cannot suppose that the legislature intended to confer powers not to be exercised, for that would be idle; and to give effect to that part of the act we must hold, according to the natural import of the language, that the process given was intended for all cases for liens which justices of the peace are authorized to hear and determine.    We therefore hold that the justice of the peace had jurisdiction to issue the writ of attachment, by virtue of which the shingles in question were seized by the defendant.

It being determined that the shingles were seized by virtue of a lawful writ, the next question is, whether the showing of such writ constituted a sufficient defense for the officer against this action, or whether he was bound to go further,

and to litigate in this action the merits of the attachment suit, and to show that the plaintiff in that suit had a valid claim, and the amount of it, and that such claim was in fact a lien upon the shingles. We have already decided that in suits for liens under this law, where the writ directs the seizure of the specific property in dispute, the officer is not liable to an action for doing that which he was in duty bound to perform. An action of replevin cannot be maintained against him for the property so seized. *Griffith v. Smith, ante*, p. 646. It seems to follow from the principle of protection afforded in such cases, that the officer is bound only to show his process. It is the fact that he had such process, and was required by law to execute it, and not whether the claim upon which it issued was well or ill founded, that constitutes the ground of his immunity from action. Whether the attachment suit was well founded or not, was not a matter which concerned him. His duty to serve the writ was the same in either case, and he cannot be supposed to have the means or to come prepared to establish the claim of the original plaintiff. It is enough for him to show a writ valid on its face, which he was required by law to execute, and which he did execute by seizing the property. It then appears that no action can be maintained against him; and if one has been commenced and the property taken from him, that such taking was wrongful, and he is entitled to judgment for a return of the property, or for damages to the extent of his interest as represented by the writ. The case of *Booth v. Ableman*, 20 Wis., 21, decides nothing to the contrary of this. We there held that where property was replevied from a sheriff or marshal holding it under execution, the amount of his recovery was limited to the amount of the execution, with interest and costs thereon. We apply the same principle here, and say that the amount of the defendant's recovery, if a return of the goods cannot

be had, must be limited to the value of his special property in them, which, before judgment or execution in the attachment suit, must be taken to be the sum specified in the writ, with interest, and such additional sum for costs as will defray the probable expenses of that suit. The case of *Bogert v. Phelps*, 14 Wis., 88, also cited by counsel, depended upon an entirely different principle, and has no application here.

On the whole, we see no error in the proceedings of the court below, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.