(Court of Common Pleas of Lucas County.)

## THE ADELBERT COLLEGE OF THE WESTERN RESERVE UNIVERSITY v. THE TOLEDO, WABASH & WESTERN RAILWAY CO. et al.

---

*Res · Adjudicata—Equipment  bonds—Consolidation—Limitation of  actions—Act of
May 1, 1856, construed—Jurisdiction of State Courts.*

1. An action brought by one bondholder to enforce an equitable lien based on rail-
road equipment bonds, alleging that the suit is filed "in his own behalf as well
as in behalf of all those in like interest who may come in and contribute to the

expenses of and join in the prosecution of the suit", is binding only on those who are made or become parties to the suit; the parties who are not named are not parties to the suit and are not bound by the proceedings therein, unless they elect to come in and claim as such and bear their proportion of the expenses; or unless, after having had notice and an opportunity to come in and make themselves parties, they refuse or neglect to do so.

2. Such a suit does not come under that provision of the chancery practice, now adopted in the codes of many of the states, that when the question is one of a common or general interest of many persons, or when the parties are very numerous, and it is impracticable to bring them all before the court, one or more may sue for the benefit of all, for, by express averments of the bill, the benefit of the litigation was offered only to such other bondholders as should elect to come in and make themselves parties.

3. The fact that by the final decree the court found the amount due on the entire series of bonds and declared the same a lien, and ordered the property sold, did not change the character of the suit, or affect the bondholders who were not parties, and is not, therefore, res adjudicata.

4. Even though it should be held that such suit becomes a class or representative suit by the final decree of the court in which it was brought, although the other bondholders were not brought in, by reversal that decree becomes a nullity, and by the subsequent dismissal of the bill only the complainants are bound.

5. Suits brought by individual bondholders in which no relief is sought or obtained in behalf of other bondholders, and in which they were not permitted to become parties, presumably because the suit was an individual one, do not constitute a bar to the subsequent suits of other bondholders of the same class. Such a defense, interposed on the ground that the first or preceding suit was a representative or class suit, is not available where the party whose property is sought to be charged with the payment of the debt allows a suit, individual in form, to proceed, without objection, and without having other bondholders of the same class and parties.

6. An action to enforce a lien upon the property of a consolidated raiload company, based upon an amount alleged to be due on equipment bonds issued by a constituent company, is an action not upon a liability created by statute, nor upon a written agreement, but is solely for equitable relief; and the period of limitation of such actions is ten years from the date when the cause of action accrued.

7. The cause of action as to each instalment accrues when the same matures; the right to enforce the lien as to subsequently accruing instalments of interest, or as to the principal of the bonds, cannot be said to have accrued prior to the time when such instalments and principal respectively matured.

8. The act of May 1, 1856 (1 S. & C. 327), authorizing a railroad company whose line shall be made to a point in another state to consolidate with the company or companies of "an adjoining state" for the purpose of forming a continuous line for the passage of cars, may as properly be construed to mean the state adjoining the state in which the first company has its line of road, as the state adjoining the state in which the first company is incorporated.

9. A railroad company in possession and ownership of property acquired by consolidation, foreclosures and sales, in which the consolidation proceedings were regarded as lawful, is not in a position to question the validity of the consolidation as a defense to an action on equipment bonds issued by a constituent company.

10. A state court has jurisdiction of an action to enforce an equitable lien upon the property of a railroad company, commenced prior to foreclosure proceedings in the federal court, when that court no longer has jurisdiction and the rights of the plaintiffs in the state court were not adjudicated in the proceedings in the federal court.

(Decided July 16, 1894.)

PUGSLEY, J.

On the 1st day of November, 1862, The Toledo & Wabash Railway Co. issued and sold its equipment bonds to the amount of $600,000, payable on May 1st, 1883, with interest at 7 per cent. per annum, payable on the 1st day of May and the 1st day of November in each year as per coupons attached. The plaintiff and the several cross-petitioners are the holders and owners of these bonds to the amount of $243,500, and they seek in this action to enforce a lien which they claim to have on the property of said company for the payment of said bonds and the unpaid interest thereon.

The Supreme Court held in the case of Compton v. Railway Co., 45 Ohio St. 592, that under the statute in force in 1865, when the Toledo & Wabash Ry. Co. was consolidated with certain other railroad companies, thereby forming the Toledo, Wabash & Western Railway Co., and under the stipulations contained in the consolidation agreement then executed by the constituent companies, the holders of these equipment bonds acquired a lien upon the property of the Toledo & Wabash Railway Co., and the right to have said property applied to the payment of said bonds and interest. It must be conceded that this decision is conclusive upon this court as to the right of the plaintiff and cross-petitioners to the relief which they ask, unless by reason of certain facts which were not involved in the Compton case, it is shown that the present defendant, the Wabash Railroad Company, has a good and valid defense.

1. It is contended that the final decree of the U. S. Circuit Court for the District of Indiana in what is known as the Ham suit (which is pleaded in this case, but was not pleaded in the Compton case,) is a bar to the prosecution of this action. The history of the Ham suit, so far as it is necessary to state it, is as follows: In July, 1880, in that suit, Benjamin F. Ham and seven other persons filed their amended and supplemental bill of complaint against the Wabash, St. Louis & Pacific Railway Co., and others, alleging that it is filed "in their own behalf, as well as in behalf of all those in like interest who may come in and contribute to the expenses of and join in the prosecution of the suit," and alleging the ownership by them of certain of these equipment bonds, and a default in the payment of the interest. The bonds held by complainants amounted to the sum of $113,500, or less than one-fifth of the entire series. The prayer of the bill is that the court may adjudge and decree that the equipment bonds held by complainants shall be exchangeable for the like amount of the bonds secured by the consolidated mortgage, and that the defendant, the Wabash, St. Louis & Pacific Railway Co. pay to complainants the interest due on their bonds since November 1, 1874; and for all other and proper relief. Such proceedings were had in that suit that in May, 1884, a final decree was rendered, finding the total amount due, both principal and interest, on the entire series of bonds, and finding that said amount is a lien upon all the property which, on the 29th day of May, 1865, was in the possession of the Toledo & Wabash Railway Co., situated in the states of Ohio and Indiana subject to the liens of four certain mortgages, and ordering the said property to be sold subject to said mortgages; and that the proceeds of the sale, after paying the costs, be brought into court. The defendant, the Wabash, St. Louis & Pacific Railway Co., at once appealed said cause to the Supreme Court of the United States, and in May, 1885, the Supreme Court reversed the said decree, and ordered the cause to be remanded to the circuit court, with directions to disallow the lien claimed by the holders of the equipment bonds. Railway Co. v. Ham, 114 U. S. 587. Subsequently, in May, 1888, the circuit court vacated the said final decree, and disallowed the claim of lien set up in said suit by the holders of equipment bonds, and dismissed the bill for want of equity. (Record of Ham suit, Exhibit "P," pages 130, 161, 205, 220, 221 and 232.)

The claim is that the Ham suit was a representative or class suit, and that all holders of the bonds are bound by the final judgment of dismissal. The plaintiff and cross-petitioners in this case were not any of them parties to that suit. None of them came into said suit nor appeared therein, either before or after decree. No pleading or claim setting up the bonds held by them was filed therein, and no notice was given to them by publication or otherwise to join in the prosecution of said action or to share in the fruits of the decree. The action was brought for the benefit

of only such bond-holders, other than the complainants, as should join in the prosecution of the action and contribute to the expenses thereof.

The rule which is fairly to be derived from the authorities is, that in such an action, the parties who are not named are not parties to the suit, and are not bound by the proceedings therein, unles they elect to come in and claim as such, and bear their proportion of the expenses; or unless, after having had notice and an opportunity to come in and make themselves parties, they refuse or neglect to do so. Pomeroy's Remedies (2d ed.) secs. 396 to 399; 2 Black on Judgments, sec. 545; O'Brien v. Browning, 49 How. (N. Y.) 109; Story's Equity Pleadings, sec. 99; Thonron v. R. R. Co., 38 Fed. Rep. 673; Stevens v. Brooks, 22 Wis. 672; Jones v. Lansing, 7 Paige, 583; Coann v. Atlanta Co., 14 Fed. Rep. 4; Hubbell v. Warren, 8 Allen, 173; Powell v. Wright, 7 Beavan, 450; No. 48 Equity Rules U. S. Courts.

The usual practice in courts of equity, when a decree is rendered in favor of a class represented by the complainant, is to refer the cause to a master to ascertain who the other interested parties are, and to notify them to come in and set up their demands; and then, if they decline to come in, it has been held, they will be excluded from the benefit of the decree. Johnson v. Watters, 111 U. S. 640; Trustees v. Beers, 2 Black, 48; Story's Equity Pleadings, sec. 99.

Some authorities were cited by counsel for the defendant which, it is claimed, sustain their position. All have been examined, but only those will be noticed which are principally relied upon.

In Willoughby v. Chicago Junction Railway Co., 50 N. J. Eq. 656, a suit had been brought by a stockholder of a corporation in behalf of himself and all other stockholders, to enjoin the corporation from consummating an agreement made with certain parties. The court held that the agreement was valid, and entered a decree dismissing the bill. Subsequently this suit was brought, by another stockholder, in behalf of himself and all other stockholders, to obtain the same relief. It was held that the decree in the first suit was a bar. The grounds for this decision are, in substance (pages 664 to 667) that the complainant in such a suit does not prosecute it in his own right. He has no standing in court as a party, except on the refusal, either express or implied, of the corporation itself to prosecute. The corporation is the real complainant, and the relief to be obtained is for the benefit of the corporation as such. There must be an unreasonable refusal on the part of the directors of the corporation to prosecute, before a stockholder can begin the action; and when there has been an adjudication at the suit of one stockholder, which is conclusive upon the corporation, the refusal of the directors to begin another suit for the same relief is not unreasonable, and hence such other suit cannot be brought by another stockholder. The principle of the decision, is that when such an action is brought by a stockholder, whether individually or as a representative of a class, it is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder plaintiff. 3 Pomeroy's Eq. Jurs. sec. 1095.

A similar principle is involved in the case of Harmon v. Auditor, 123, Ill. 122. A bill was filed by the tax-payers of a town in behalf of themselves and the other tax-payers against a railway company and the town, to enjoin the town from issuing its bonds to the company. The court held that the town had power to issue the bonds, and dismissed the bill for want of equity. Subsequently this suit was brought by other tax-payers, praying that the bonds be declared to be null and void, and that the town officers be enjoined from collecting any taxes to pay the same from

the property of the complainants and the other tax-payers. It was held that the decree in the first suit was a bar. That decree was conclusive against the town, and every tax-payer, that the bonds were valid. Every tax-payer is a real though not a nominal party to the judgment. The sixth paragraph of the syllabus shows the ground of the decision:

"A judgment or decree against a county or township, or its legal representatives, is binding on all the citizens, though not parties to the suit. If the same is for a sum of money, it imposes an obligation against the citizens which they are compelled to discharge; and if for the purpose of its payment, the proper authorities levy and attempt to collect a tax, none of the citizens can, by instituting proceedings to prevent the levy or collection of the tax, dispute the validity of the judgment or relitigate any of the questions which were or could have been litigated in the original action."

Both of these cases proceed upon the ground that the parties bringing the suit represent the corporation, and the relief sought, if obtained, will belong to the corporation, and not to themselves. Hence, if the relief is denied, the corporation cannot relitigate the same matter in another suit brought by other parties in its behalf to obtain the same relief.

In the Ham case the parties bringing the suit did not represent the corporation, and sought for no relief in its behalf.

In the case of Dewey v. St. Albans Trust Co., 60 Vt. 1, there were over 2,400 depositors in an insolvent bank. Of these 1,100 being minors and married women, claimed a preference under the statute. The receiver of the bank filed a petition asking for the directions of the court as to the distribution of the funds. Notice of the hearing on the petition was published for three weeks, and was served on the chairman of the depositors' committee. The receiver and the general creditors and those who claimed a preference were all represented at the hearing. It was decreed that there should be an equal distribution of the funds. From this decree an appeal was taken to the Supreme Court by twelve of the depositors, who claimed a preference. The case was fully argued in that court, and the decree was affirmed. Subsequently, a new petition to obtain the same relief was filed by certain of the depositors who claimed a preference, among whom were some of those who appeared in the first case. The court held that although the general rule is that all persons interested in the litigation should be before the court, this case is within the exception that where the parties are so numerous as to make it impracticable or greatly inconvenient or expensive, it is sufficient if such number be joined as will fairly represent the interest of all, and that, as both classes of depositors were fairly represented in the litigation, all of them were bound by the decree. In this case the court was asked to make an order for the distribution of a certain fund in the hands of a receiver. The order would necessarily determine the rights of all parties interested in the fund. Notice by publication was given to all persons interested, and it was found that they were all fairly represented by those who appeared at the hearing. Where the question is one of a common or general interest of many persons, and suit is brought by one for the benefit of all without limitation, the court will take care that sufficient persons are before it honestly, fairly and fully, to ascertain and try the general right in contest. Story's Eq. Plead., sec. 120.

The Ham suit was not brought under that provision of the chancery practice now adopted in the codes of many of the states, that when the question is one of a common or general interest of many persons, or when the parties are very numerous, and it is impracticable to bring them all before the court, one or more may sue for the benefit of all. The com-

plainants did not profess to represent all the bondholders, but by express averments of the bill, the benefit of the litigation was offered only to such other bondholders as should elect to come in and make themselves parties and share in the expense of the litigation. The fact that by the final decree the court found the amount due on the entire series of bonds, and declared the same a lien, and ordered the property sold, did not change the character of the suit, nor affect the bondholders who were not parties. The proceeds of sale were ordered to be brought into court, but no further steps were taken. The other bondholders were not made parties. They never came in and availed themselves of the benefits of the suit, nor assumed its burdens or liabilities. For these reasons, the first decree of the circuit court was not res adjudicata as between them and the defendants, and for the same reasons the final judgment of dismissal is not res adjudicata.

But even if the suit became a class or representative suit by the final decree, although the other bondholders were not brought in, still the same result will follow. When the final decree was reversed and the cause remanded, the case stood in the circuit court as it did before trial or judgment. By the reversal the final decree became a nullity. Therefore the dismissal of the bill by the circuit court bound only the complainants, none of the other bondholders being parties, the same as if it had been the first and only judgment in the case. It is believed that none of the cases cited by defendant sustain a contrary conclusion.'

2. It is contended 'that the decree in the Compton case is a bar to the prosecution of this action, and that the only remedy which the plaintiff and cross-petitioners have is under that decree, on the ground that the Compton suit is a class or representative suit.

The petition in the Compton case, which was filed in this court on February 3, 1880, sets out the bonds owned by Compton, and prays that the defendant, the Wabash, St. Louis & Pacific Ry. Co., be decreed to pay the amount due to the plaintiff upon the said bonds which he holds and owns, and, in default thereof, that the property originally owned by the Toledo & Wabash Railway Co. be decreed to be sold for the payment of said bonds owned by said plaintiff. (Record of Compton suit, Exhibit "M" pages 2, 47 and 48.) In March, 1882, a final decree was rendered by this court in favor of Compton from which an appeal was taken to the district court. While the cause was pending in the district court, the Adelbert College, the plaintiff in this action, filed a motion for leave to be made a defendant, and to file answer therein, which motion was overruled. (Exhibit "M" pages 131 and 133.) The cause was reserved to the Supreme Court for decision, and at its January term, 1888, the Supreme Court rendered a final decree in favor of Compton, and remanded the cause to this court to carry the decree into execution. By such final decree the court found the amount due to the plaintiff Compton upon the bonds owned by him for principal and interest on the 1st day of May, 1888, to be the sum of $339,920.40, and ordered "that the said defendants or any of them (Exhibit "M" page 236) pay to said plaintiff the said sum of $339,920.40 now due on said bonds owned by the plaintiff as aforesaid, with interest thereon to the day of payment to the plaintiff, within ten days from the entry of this decree; and if default shall be made in such payment, then an order of sale issue for the sale as upon execution at law of all said railroad and real property, together with the structures thereon, and the fixtures and appurtenances thereunto appertaining, upon which the lien of said bonds, known as equipment bonds, is hereby declared to exist, which is situate in the state of Ohio and the jurisdiction of this court, subject, however, and subject only, to the liens of the two

mortgages hereinbefore mentioned as executed by the Toledo & Illinois Railroad Co. to the Farmers' Loan & Trust Co., and the Toledo & Wabash Railroad Co. to Edwin D. Morgan, and to the indebtedness secured by each of said mortgages; and that from the proceeds of such sale the costs of this action as taxed be paid, and the residue of such proceeds be brought into court to abide the further order herein on the footing of this decree.''

After said cause had been remanded to this court, and on the 6th day of June, 1888, a motion was filed therein to make William F. Redmond and four other persons (who are bondholders and cross-petitioners in this action) parties defendant, with leave to answer, which motion was over-ruled on December 31, 1888. (Common Pleas Journal 78, page 17.) On the 27th day of October, 1888, said Compton was made a party defend-ant in the consolidated cause of James R. Jesup et al. v. the Wabash, St. Louis & Pacific Railway Co. et al., then pending in the Circuit Court of the United States for the Northern District of Ohio, and ordered to ap-pear therein and set up his lien. On March 28, 1889, he filed his answer in said consolidated cause, contesting the jurisdiction of the court, and setting up the decree in his favor of the Supreme Court of Ohio. Such proceedings were had in said cause that, on the 21st day of July, 1892, a decree was rendered, finding that the decree of the Supreme Court of Ohio was a conclusive adjudication as to the amount, validity, and priority of said Compton's lien upon the property of the Toledo & Wabash Railway Co., and that said Compton is entitled to redeem the said property from cer-tain prior mortgage liens thereon, amounting to the sum of $8,540,058.09, and ordering among other things, that if said Compton shall fail to re-deem the said property within the time and upon the terms provided, he shall be taxed with all the costs of the proceedings had in and about his claim; and in default of payment of said costs, execution shall issue therefor. Compton appealed from said decree to the United States Cir-cuit Court of Appeals for the Sixth Circuit, where said cause is now pend-ing. (Exhibit "T," pages 149, 163 and 271.)

The question to be determined is, whether the Compton suit was a representative or class suit; and if it was, whether the final decree in that suit is a bar to this action. Both the district court and this court re-fused to allow the bondholders in this action to intervene in the Comp-ton suit, presumably upon the ground that it was an individual suit. The refusal of the courts to grant to these bondholders any remedy in the Compton case, is, it seems, sufficient reason why they should be permitted to maintain an independent suit; but assuming that they might properly have been made parties to the Compton case, or that upon the distribu-tion of the proceeds of any sale made under the Compton decree they ought to be allowed to intervene upon terms or otherwise, is there any valid objection to this suit? In other words, is the Compton decree itself a bar to this suit? The pleadings and decree in the Compton suit show that in form it was an individual suit only. No relief was sought nor ob-tained in behalf of other bondholders. Compton was in sole control of the case, and might have dismissed it any time before decree and after de-cree. As the case now stands, if the amount found due him is paid or his claim is discharged, no order of sale can issue. Under such circumstanc-es, to hold that the Compton decree is itself a bar to this action would practically be a denial of all remedy to these bondholders. They have not as yet been able to come into the Compton suit. They may never be able to come into it. They ought at least to be allowed to have such an adju-dication as will preserve their rights, whatever they may be.

It is said that Compton, as an individual bondholder, cannot enforce his rights under the lien separate and distinct from the rights of all the

other bondholders secured by the same lien, and belonging to the same class. This may be true, but the defendants in that case made no claim that other bondholders should be brought in. They, without objection, allowed the case to proceed as the individual suit of Compton, and all which Compton obtained was a decree finding the amount due to him on his bonds, and ordering a sale. The proceeds of sale are to be brought into court for distribution. It is yet to be determined, in case a sale is made, how the proceeds are to be distributed.

Cases are cited which hold that when a single bondholder brings suit to foreclose a mortgage that has been given to a trustee to secure payment of a large number of bonds, his action is for the benefit of all the bond-holders. There the trustee represents all the bondholders in all matters of litigation respecting their common rights, and should bring the suit. The bondholder is allowed to bring suit for the enforcement of the mortgage, only in case the trustee improperly refuses or neglects to sue; and in such case he should make the trustee a defendant, and the other bond holders may come in and prove before the master, without making themselves parties, and may not therefore bring a separate action. Here, there was no trustee. Compton represented and claimed to represent only the bonds owned by himself. He was not prohibited by the principle of these cases from bringing a separate action, and he was allowed to do so without objection by the owners of the property sought to be charged with the payment of his debt.

Other cases are cited which hold that one bondholder cannot, by bringing an action at law upon his bonds, and obtaining judgment and levying execution, obtain a preference over other bondholders. It is submitted that these cases are not controlling, because if such is the object or effect of the Compton suit, the objection should be made there, and not here. If Compton wrongfully claims a preference under his decree, that is no answer to the claim of these bondholders to the relief to which they are entitled.

They do not claim a preference over Compton, and do not admit that the Compton decree gives him a preference over them. Their rights are not fixed by the Compton decree, and they have not been allowed to come in under that decree and set up their rights. My conclusion is that the Compton decree is not a bar to the maintenance of this action.

3. It is contended that the rights of the plaintiff and cross-petitioners are barred by the statute of limitations. Default occurred in the payment of the semi-annual interest coupons which fell due on May 1, 1875, and no interest has since been paid. The bonds became due on May 1, 1883, and are wholly unpaid. The petition in this case was filed April 28, 1883, and the summons issued on the same day, was served on the Wabash, St. Louis & Pacific Railway Co. on May 5, 1883. The plaintiff claimed as owner of two of the bonds of $500 each, and sought no relief in behalf of any other bondholder. On January 5, 1889, the cross-petitioners having been made defendants by leave of court, filed their answer and cross-petition, setting up the bonds owned by them, and asking for relief in their own behalf, and in behalf of all bondholders who may appear and unite in the action and contribute to the expenses thereof. Notice to answer said cross-petition was duly published for a large number of defendants, the first publication being on January 9, 1889; and afterwards notice to answer said cross-petition was duly published for the remaining defendants, the first publication being on April 17, 1889. These defendants so notified included all the corporations and individuals who were then interested in the railroad property as owners or otherwise.

The question to be determined is, whether this action is upon an agreement in writing, and so is barred in fifteen years under sec. 4980, Rev.

Stat., or is upon a liability created by statute, and so is barred in six years, under sec. 4981, Rev. Stat., or is an action for relief, under sec. 4985, Rev. Stat., and so is barred in ten years. The right of the bondholders to a lien is placed by the Supreme Court upon two grounds: First, upon the ground that a lien results from the liability imposed by the statute upon the consolidated company to pay the debts of the constituent companies; and, second, independently of the statute, upon the stipulation of the consolidation agreement that the bonds should be protected by the new company; the principle being that when property is transferred upon condition that the transferee shall pay some third person a debt, the latter acquires an equitable lien on the property to the extent of the debt to be paid. If this was an action at law against the consolidated company to recover a personal judgment, it might well be claimed that it was both an action upon a liability created by statute and an action upon a written agreement. But it is not such an action. It is an action solely to enforce an equitable lien upon property in possession of the successors of the consolidated company. An equitable lien for the payment of the bonds was acquired when the consolidated agreement was made, but it could not be enforced until there was a default in the payment of the bonds. The cause of action accrued when the default occurred. While the question is not free from difficulty, I am of the opinion that the action is not upon a liability created by statute, nor upon a written agreement, but is solely for equitable relief, and the rule is, that the period of limitation applicable to an action for equitable relief is ten years, when the statute does not especially provide any other limitation. "An action for relief not herinbefore provided for can only be brought within ten years after the cause of action accrues," sec. 4985, Rev. Stat. It is an action for relief, and it is "not hereinbefore provided for." The cases in which the limitation of ten years under sec. 4985, Rev. Stat., has been applied, seem to sustain this view.

In Neal v. Nash, 23 Ohio St. 483, a surety in a judgment against him and his principal paid the judgment to the creditor, with the agreement that it should remain in force and be assigned to him; and having procured the assignment of the judgment, he brought an action to be subrogated to the rights of the creditor in the judgment. It was held that the statutory period of limitation applicable in such an action—it being for equitable relief only—is ten years.

In Neilson v. Fry, 16 Ohio St. 558, it is said that an action for equitable relief is limited to ten years.

In Hawkins v. Lasley, 40 Ohio St. 37, an action was brought under the statute to charge the individual property of the partners with the payment of a judgment against the partnership. It was held that it was not an action upon a liability created by statute, but was an action for relief "not hereinbefore provided for," and was barred in ten years.

In Gray v. Kerr, 46 Ohio St. 652, it is held that the cause of action in favor of one partner against his co-partner for an account accrues upon the dissolution of the partnership, and that such an action is governed by sec. 4985, Rev. Stat., and can only be brought within ten years after the cause of action accrues.

In Bryant v. Swetland, 48 Ohio St. 194, it is held that an action to reform a written instrument on the ground of mistake comes within the class provided for by sec. 4985, Rev. Stat., which limits the time within which the same may be commenced to ten years after the cause of action accrues.

In Swan v. Shahan, 1 O. C. C. R. 216, it is held that an action to enforce specific performance of a verbal contract for the transfer of real and

personal property is for equitable relief, and properly comes within sec. 4985, Rev. Stat.

It is claimed that the right to enforce the equitable lien accrued as to the entire indebtedness on the 1st day of May, 1875, the date of the first default in the payment of interest, and that if the ten years' statute is applicable, such right was lost as to the whole indebtedness on the 1st day of May, 1885. No authorities were cited to support this claim, and I am unable to see on what principle the right to enforce the lien as to subsequently accruing installments of interest, or as to the principal of the bonds, can be said to have accrued prior to the time when such installments and principal respectively matured. The cause of action as to each installment accrued when the same matured, and was barred in ten years thereafter. Under this holding, the eight semi-annual coupons which matured prior to May 1, 1879, on each of the bonds held by the cross-petitioners, must be excluded from any recovery in this action.

4. It is contended that the consolidation agreement of 1865, under which the lien of the equipment bonds is claimed, was unauthorized by law, and that this question was not raised in the Compton case. The consolidation was effected under the statute of 1856 between the Toledo & Wabash Railway Co., which issued the bonds, and three railroad companies of Illinois, thereby forming the Toledo, Wabash & Western Railway Co. The Toledo & Wabash Railway Co. was itself a consolidated company, formed in 1858 under the same statute, by a consolidation of the Toledo & Wabash Railroad Co., an Ohio corporation, and the Wabash & Western Railway Co., an Indiana corporation, thereby acquiring a continuous line of railroad from Toledo to the west line of the state of Indiana. The statute referred to is the act of May 1, 1856. (1 S. & C. 327.) Sec. 1 is as follows:

"It shall be lawful for any railroad company in this state, organized under the general or any special law, or which may hereafter be organized in this state, and whose line of road shall be made or in the process of construction, to the boundary line of the state, or to any point either in or out of this state, to consolidate its capital stock with the capital stock of any railroad in an adjoining state, the line of whose road has been made or is in the process of construction to the same point, and when the several roads so unite as to form a continuous line for the passage of cars."

It is claimed that the Illinois companies were not "in an adjoining state;" that is, they were not in a state adjoining the state of Ohio, and that therefore the consolidation of 1865 was illegal. The line of the Toledo & Wabash Railway Co., which was formed by consolidation under this statute, extended to "a point out of this state," namely, to a point in the state of Indiana, or to the boundary line between the states of Indiana and Illinois. The Toledo & Wabash Railway Co. was therefore a railroad company in this state, whose line of road was partly in the state of Indiana, and the Illinois companies were railroad companies in the state of Illinois, a state adjoining the state of Indiana. Manifestly, the object of the statute was to authorize the consolidation of railroad companies whose roads form a continuous line for the passage of cars, and to accomplish that object, the words "adjoining state" may as properly be construed to mean the state adjoining the state in which the first company has its line of road as the state adjoining the state in which the first company is incorporated. I see no reason why the consolidation of 1865 was not a consolidation of a railroad company in this state, having a line of road in the state of Indiana, whith a railroad company in an adjoining state.

This question as to the validity of the consolidation seems to be raised

now for the first time, although the matter of these equipment bonds has been before the courts, both federal and state, in numerous and various forms since 1878. And the claim that the consolidation was illegal no where appears in this case, except in the argument of counsel. The answer of the Wabash Railroad Co. (printed record, page 236) admits that on or about the 29th day of May, 1865, the said Toledo & Wabash Railway Co. entered into an agreement of consolidation with the three Illinois railroad companies (naming them) forming by such consolidation a new company, known as the Toledo, Wabash & Western Railway Co. And it admits that said agreement for consolidation was consummated on or about the date named in said petition, but denies the effect claimed from said agreement of consolidation; that is, it denies that a lien was thereby created for the payment of the bonds. In the agreed statement of facts (paragraph 18, page 7), it is agreed that on or about the 29th day of May, 1865, the Toledo & Wabash Railway Co. and the three Illinois railroad companies (naming them) entered into articles of consolidation, and thereby formed the Toledo, Wabash & Western Railway Co. A copy of the articles of consolidation is attached. These were duly executed and filed, and recite a compliance with the laws of the several states of Ohio, Indiana and Illinois. Nowhere in the record is it intimated that the Toledo, Wabash & Western Railway Co. was not a corporation duly formed by consolidation under the Ohio statute. If the question as to the validity of the consolidation is properly raised upon the record in this case, it might properly have been raised upon the record in the Compton case, because in this respect the records in the two cases are alike. Whether or not the Supreme Court considered the question in the Compton case we do not know, but we do know that the court in its opinion treated the consolidation as legal and valid Under such circumstances, this court would not hold the consolidation to be illegal, unless clearly convinced of its illegality. It may be added that the consolidation proceedings were treated as valid by the consolidated company and all its successors. It took all the property of the constituent companies, and managed and operated the consolidated railroad for a period of years. It executed mortgages upon the same, incurred obligations, and exercised all the powers of a corporation, without question. It was itself consolidated with other railroad companies, and through such consolidation and subsequent sales and consolidations, the ownership and possession of the property in question have devolved upon the present Wabash Railroad Co., defendant in this case. It was at least a corporation de facto, entitled to all the rights and chargeable with all the liabilities of such a corporation. It recognized its liability upon the equipment bonds by regularly paying the interest thereon as it fell due for a period of nine years, until it became insolvent in 1874; and the various foreclosures, sales, and consolidations which have since taken place in the Wabash railroad system can only be sustained on the theory that the consolidation of 1865 was valid. The final decree in the consolidated cause of Jesup and others, under which the defendant claims title to the property, expressly found that the consolidation was lawfully effected.

In view of these considerations, it is submitted that the defendant is not now in a position to question its validity.

5. It is contended that under the facts in this case the federal courts of Ohio and Indiana had exclusive jurisdiction to ascertain and determine the liens upon the property, and order its sale, and that this court is now without jurisdiction. This claim has reference to the various suits and foreclosure proceedings in the federal courts begun on the 27th day of May, 1884, and terminated by the final decree in the consolidated cause

of James R. Jesup et al. v. the Wabash, St. Louis & Pacific Railway Co. et al., rendered on March 23, 1889, and by the sale and delivery of the possession of the property to the purchasing committee on July 1, 1889.

The defendant, the Wabash Railroad Co., became incorporated on August 1, 1889, and by a conveyance from the purchasers, acquired and now holds the title to the property, and stands in the shoes of said purchasers —and in this case contests the jurisdiction of this court. The authorities relied upon to support the claim of want of jurisdiction apply the familiar rule that the court which first takes cognizance of a controversy is entitled to retain jurisdiction to the end of the litigation, and to take possession and control of the subject-matter of the investigation, to the exclusion of all interference by other courts of co-ordinate jurisdiction. There is no doubt as to the rule, but does it apply to the facts of this case? This action was begun on April 28, 1883, before the commencement of any of the said proceedings in the federal courts, and has remained pending in this court ever since. During the pendency of those proceedings, no attempt was made by any of the parties to this action to interrupt or interfere with the possession of the receivers appointed by the federal courts. Neither the plaintiff nor any of the cross-petitioners, nor any one representing them, was a party to those proceedings, and their rights were in no manner adjudicated therein. The said purchasers at the foreclosure sale, and their predecessors in title, were parties to this action, and appeared therein prior to said sale, and all had knowledge at and prior thereto of the specific demands and claims which the plaintiff and cross-petitioners assert in this action. Those proceedings are ended. The receivers are discharged, and the property is now in the possession of its owner, and has been since August, 1889; and the owner, the Wabash Railroad Co., is a party to this action. Certainly the federal courts now have no jurisdiction over the subject-matter of this suit, and why may not the plaintiff and cross-petitioners enforce their lien, which the Supreme Court held is available against all persons deriving title from the consolidated company of 1865? (45 Ohio St. 593.) It is believed that none of the authorities cited hold that this may not be done. On the contrary, in one of these cases this precise question arose, and was decided in favor of the right. I refer to the case of Factors Co. v. Murphy, 111 U. S. 738, which was on error to the Supreme Court of Louisiana. The property of a bankrupt covered by a mortgage was sold under an order of the District Court of the United States in bankruptcy, the order being to sell the bankrupt's property free from encumbrances. The mortgagee was not a party to the bankruptcy proceeding, and subsequently brought an action in the state court to foreclose his mortgage. It was held that the sale of real estate of a bankrupt by order of the United States Court, free from the lien of a mortgage, is invalid as to the creditor, and as to the purpose of discharging the lien, unless he is made a party to the proceeding; and that the mortgagee had the right to a decree of foreclosure. But it is claimed that the sale of the property by the state court, even after the relinquishment of possession by the federal court, will give no title to the purchaser thereunder as against the holder of the title under the proceedings had in the federal court; and the case is cited of Heidriter v. Elizabeth Oil Cloth Co., 112 U. S. 294. That case was an action of ejectment brought by a purchaser at a sheriff's sale under a decree of a state court, enforcing a mechanic's lien, against a purchaser at a marshal's sale under a decree of the United States Court rendered in proceedings for a violation of the Internal Revenue Laws. It was a controversy over the title. The premises were first seized by the officers of the United States, and while they were in the possession and custody of the marshal, proceedings in the state court

were begun and prosecuted to judgment. The premises were sold under a decree of the United States Court; and possession thereof delivered to the purchaser. Afterwards they were sold by the sheriff under the judgment of the state court. It was held that when proceedings in rem are commenced in a state court, and analogous proceedings in rem in a United States court against the same property, exclusive jurisdiction for the purpose of its own suit is acquired by the court which first takes possession of the res, and the acts of the other court in assuming to proceed to judgment and to dispose of the property convey no title. Although the sale under the state court judgment was not made until the property had passed from the possession of the United States District Court, yet, the initial step on which the sheriff's proceedings depended—the commencement of the proceedings to enforce the mechanic's lien, asserting the jurisdiction and control of the state court over the property sold, took place when the property was in the exclusive custody and control of the district court. It was not decided whether the law applicable to the Internal Revenue proceedings authorized an absolute forfeiture of the res, including all interests and estates in it, so as to over-reach antecedent liens, and adverse claims, or only of the actual interest of the owner charged with the violations of law at the time of the alleged offenses. If there was an absolute forfeiture, the purchaser under the decree of the United States Court obtained a good title, as that court first acquired jurisdiction. If there was a forfeiture of only the interest of the owner, the purchaser at the sale under the state court judgment acquired no title which he could assert in an action of ejectment against the purchaser under the federal decree, because the state court proceedings were begun while the property was in the exclusive jurisdiction of the federal court, and the purchaser under the federal decree was not a party to said proceedings.

The case is distinguishable from the case at bar. Here the state court first acquired jurisdiction. This is certainly true as to the bonds owned by the plaintiff, and although the cross-petition was not filed until after the proceedings in the federal courts had been commenced, yet no adverse action was taken by the state court while those proceedings were pending, and neither the plaintiff nor cross-petitioners were parties to those proceedings; and furthermore the purchaser at the foreclosure sale and the lienholders were all parties to the suit in the state court before the property passed out of the jurisdiction and control of the federal court. Under these circumstances, as the rights of the plaintiff and cross-petitioners were not adjudicated in the federal court, and that court no longer has jurisdiction, there seems to be no valid objection to the power of this court to proceed and hear and determine the matters in issue.

6. It is contended that the sole right of the plaintiff and cross-petitioners is the right to redeem, and that this redemption must be of the entire property in Ohio and Indiana covered by their lien, from the four mortgages thereon, which are conceded to be prior liens. Under this head many important and interesting questions were presented and ably discussed by counsel, with numerous citations of authorities. In the view which I take of the case, it is not necessary to consider these questions. So far as this branch of the case is concerned, the situation is not materially different from what it was when the decree of the Supreme Court of Ohio was rendered in the Compton case. It is true that the proceedings in the consolidated cause for the foreclosure of the mortgages and the sale of the property have since been taken; but as already shown, the plaintiff and cross-petitioners were not parties to those proceedings, and are not bound thereby. If in 1888 Compton was entitled, as the Supreme Court

found and decided, to an order for the sale of the property, the plaintiff and cross-petitioners are entitled to the same order now.

Having disposed of all the matters of defense not set up nor involved in the Compton case, and having found that none of these matters constitute a defense, it is the duty of the court to render the same decree which was rendered in the Compton case, and this is accordingly done.

A decree may be taken in favor of the plaintiff and cross-petitioners in accordance with this opinion, finding the amount due on the bonds, and declaring the same a lien, and ordering a sale in all respects as was found and ordered in the Compton case.

Hon. George Hoadly and R. R. Kinkade, for plaintiff and cross-petitioners.

Rush Taggart, Henry Crawford and A. L. Smith, for the Wabash Railroad Co.