PAINE
v.
GILL.

Judgment affirmed, with costs.

PAINE VS. GILL.

A person who performed manual labor in running logs for or on account of the
owner, agent or assignee, had a lien upon the logs for his wages, under the
Revised Statutes of 1858.

If the employer had previously sold the logs and received payment for them, the
laborer would be entitled to a lien on the logs for his services in running them
to the place designated for their final delivery to the purchaser. The em-
ployer would be regarded, in such a case, as the agent of the purchaser, in
running the logs.

Where the labor was performed before chap. 215 of the General Laws of 1860
went into force, the lien was *held* to have been acquired under the statute of
1858, although the proceedings for enforcing the lien were had under the
statute of 1860.

APPEAL from the County Court of *Winnebago* County.

*Paine* brought an action before a justice of the peace, in
July, 1860, to recover possession of a lot of pine logs, &c.,
alleged to have been unjustly taken and detained by the
defendant. The defense was, that one Buckstaff had, on
the 25th of June, 1860, sued out an attachment before a
justice of the peace, to enforce a lien upon the logs, in which
case such proceedings were had that the logs in question
were, by order of the court, sold upon execution, for the sat-
isfaction of said lien, and were bought by said Buckstaff,
who then sold them to other parties, as whose agent the de-
fendant took and detained them. The services for which
Buckstaff claimed a lien, were rendered between the 18th of
March and the 15th of May, 1860, in running a lot of logs,
which one Hanville had, in the December previous, made a
contract to sell to *Paine*, and to deliver to him, at Oshkosh,

in May, 1860. The agreement between Hanville and *Paine*, after reciting that the former thereby sold to the latter 300,000 feet of pine lumber in the log, &c., to be delivered as above, stated that part of the price was to be paid in one yoke of oxen, to be delivered on the execution of the agreement, and $300 in supplies, when required, between that time and the 1st of May, 1860; and it was agreed that *Paine* should have a lien upon the lumber from the time it was cut until it was so delivered, for the yoke of oxen and the supplies so furnished. A witness for the plaintiff testified that "part of the logs described in the contract (same as in complaint) were delivered to the plaintiff by Hanville, on the 1st of February, 1860, and delivered a *second* time in May;" that the plaintiff had paid Hanville for the logs delivered, as early as the 1st of March, 1860; and that the logs in dispute were in the plaintiff's possession at the time they were taken by the parties who purchased from Buckstaff. Another witness testified that Hanville did not get through cutting the logs till about the 15th of March. The justice of the peace gave judgment for the defendant, which, on appeal to the county court, was reversed.

*Bouck & Edmonds*, for appellant.

Buckstaff had a lien on the logs under sec. 12, chap. 183, R. S. Chapter 215 of the General Laws of 1860 provides for the enforcement of such previously existing lien. The legislature had a right to create or change the remedy for a lien already existing. *Von Baumbach vs. Bade*, 9 Wis., 559.

*Freeman & Jackson*, for respondent:

1. The attachment, judgment, execution and sale bound no one but the parties thereto and their privies. The purchaser at the sale acquired no more title than Hanville had in the property at the time of the sale. 2 Bailey (S. C.), 480; *Freeman vs. Caldwell*, 10 Watts, 9; *England vs. Clark*, 4 Scam., 486; *Owings vs. Thompson*, 3 id., 509; 8 Johns., 334; Crocker on Sheriffs, 202. Hanville had no interest in the property at that time, and no title passed by the sale. *Galvin vs. Bacon*, 2 Fairf., 28. The title vested absolutely in the respondent upon the delivery of the logs by Hanville. 12 Mass., 300; 17 id., 197; 1 Pick., 389; 3 id., 38. 2. The

statute of 1860 was retroactive, and therefore unconstitution-
al and void. 1 Kent's Comm., 601; 8 Wheat., 493.

*By the Court*, COLE, J. We are of the opinion that the
judgment in this case must be reversed. Section 12, chap.
153, R. S., provided that any person performing manual la-
bor upon any land, *timber* or *lumber*, for or on account of the
owner, agent or assignee, might, by complying with the pro-
visions of that chapter, have a lien thereon for the amount
of work and labor done, and that the lien might be enforced
under that statute. But as the action to enforce the lien
had to be brought in the county or circuit court, the remedy
was not found to be very efficacious or complete in all cases.
Therefore, to give a more adequate and prompt remedy, the
legislature enacted chapter 215, laws of 1860. This law
gave justices of the peace cognizance of proceedings to en-
force a lien for labor and service upon logs and lumber in
certain counties, when the amount claimed did not exceed
the jurisdiction of a justice of the peace. It also made some
changes in the proceedings by which liens were to be en-
forced. But still the lien was not created or given by that
act, in the case under consideration. For section 12 of the
R. S., before cited, gave a specific lien upon any timber or
lumber in favor of any person performing manual labor
thereon. And we have no doubt that it was the intention
of the legislature to make this lien prior and superior to ex-
isting liens upon this kind of property. It is analogous in
principle and reason to the case of repairs and improve-
ments upon personal property, when the law gives a lien
upon the thing itself in favor of the mechanic or person who
has laid out his labor or money in such improvements. The
workman, then, who performed labor in running logs, had
his lien upon the specific property for the amount of his
wages, under the Revised Statutes, and before the law of
1860 was enacted. So, were we to hold that by force of the
written agreement entered into on the 19th of December,
1859, between Hanville and the respondent, the latter was
the owner of the logs when Buckstaff performed the labor
upon them, still this would not destroy Buckstaff's lien.

That would still exist against the property, and Hanville would be considered as the respondent's agent in employing Buckstaff to run the logs. But that contract is not one which made the respondent the owner of the property before the lien accrued. By the terms of that agreement the logs were to be delivered at Oshkosh. Buckstaff performed his labor and services in running them down to that point. It is true one of the witnesses for the respondent states that there was a delivery of a portion of the logs mentioned in the contract, in February. He also further testifies that they were a second time delivered by Hanville in May. What sense or meaning there can be in a second delivery, is more than we can understand. If they were once delivered, Hanville no longer had possession of them. But we presume the truth was that the logs were delivered by Hanville at Oshkosh according to the written contract. And it was in running the logs down to that point that the lien accrued.

If we were satisfied that the logs belonged to the respondent at the time the services were performed, or that he had a prior lien upon them, and that Buckstaff's lien was created by the act of 1860, we might then have to inquire whether the legislature could make the latter lien superior to the former. But from our understanding of the case, we are relieved from the consideration of any such question. The act of 1860 did not create the lien; it merely provided a way for enforcing it. Indubitably it is competent for the legislature to pass remedial statutes of that character. They create no right, but only provide a way for enforcing an existing one.

We cannot see, therefore, why the proceedings in the attachment suit of *Buckstaff vs. Hanville*, to enforce the lien, were not valid and regular. If so, the purchaser at the sale upon the execution took a good title. This view disposes of the case, and renders a consideration of the other questions discussed by counsel unnecessary.

The judgment of the county court is therefore reversed, and a new trial ordered.