## PAINE vs. WOODWORTH.

After work had been done for which the laborer was entitled to a lien under sec. 12, chap, 153, R. S. 1858, and before the expiration of the time within which he might proceed to enforce it, it was competent for the legislature to provide a new and more efficacious remedy, as was done by chap. 215, Laws of 1860; and the lien might be enforced according to that act, although no steps had been taken for its enforcement under the former statute.

Where one has contracted with another for the purchase of logs, to be delivered at a particular place, and for a first lien on them as a security for advances under the contract, such lien is subordinate to that which the law gives the laborer who performs work upon the logs necessary to the fulfilment of the contract, although such contract was filed in the proper town clerk's office before all the labor was performed.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin for lumber. Answer, that the defendant took and held the lumber, as sheriff of Winnebago county, by virtue of certain writs of attachment, &c.

On the trial, the court found the following facts: On the 21st of December, 1859, the plaintiff, *Paine*, and one Millard, entered into a written agreement as follows: Millard agreed to sell *Paine* 600,000 feet of pine lumber in the log, and to deliver the same at the plaintiff's saw mill in the city

of Oshkosh, on or before the 1st of June, 1860; and in consideration thereof, *Paine* was to pay Millard $800 in work, and $1000 in supplies, as required by Millard between the date of the agreement and June 1, 1860. Millard further covenanted that *Paine* should at all times after said lumber was cut and before its final delivery, have a lien on it for the amount due him. This agreement was filed February 18, 1860, in the office of the town clerk of the town of Shawano, in Shawano county, (that being the town where Millard then resided); and a copy of it was filed July 19, 1860, in the office of the city clerk of the city of Oshkosh, in Winnebago county. Under this agreement, Millard cut and delivered to *Paine*, at Oshkosh, the logs, &c. mentioned in the complaint, and no more. They measured 457,000 feet, and were worth $1200. They were cut in said town of Shawano, before the 27th of March, 1860. Between the making of the agreement and the date of said delivery, *Paine* furnished Millard supplies to the value of $1451.10, of which $1000 worth were furnished on the day the agreement was made. About the 21st of July, 1860, White, Cardiff and Murphy, to whom severally Millard was indebted for labor performed in the counties of Shawano, Waupaca, Outagamie and Winnebago, in hauling, drawing, rafting and running said logs, &c., between December 1, 1859, and July 14, 1860, filed their petitions for a lien in the office of the city clerk of the city of Oshkosh, and commenced suit against Millard for the recovery of the sums due them, and the collection thereof out of the logs, &c. pursuant to the provisions of chapter 215, General Laws of 1860; and writs of attachment were issued in their favor, by virtue of which the defendant, as sheriff of Winnebago county, took possession of the logs in question; and judgments were rendered in favor of the plaintiffs in the attachments, which were declared therein to be liens upon the logs, and were still unpaid. No written notice of said claims for liens was ever served upon *Paine*, or otherwise given to him; and none of the papers in the attachment suits were ever served on him. *Paine* demanded the logs of the sheriff, who refused to give them up.

The circuit court held, as conclusions of law,  1.  That the defendant did not wrongfully take possession of, or wrongfully detain the property described in the complaint. 2.  That said White, Cardiff and Murphy acquired liens upon the property for the amounts of their respective demands against Millard.  3.  That the right of property in said logs, &c. was in the plaintiff, subject however to said liens, and to the right of possession of the defendant as sheriff, &c.  4. That the proceedings taken to enforce the laborers' liens were regular and valid, and under them the defendant, as sheriff, &c., was lawfully possessed of the property at the commencement of the action, and was still entitled to its possession for the purpose of satisfying the judgments of White, Cardiff and Murphy.  5.  The defendant having waived a return of the property, the court assessed his damages at $525.07, the amount of said judgments.  6.  That the defendant was entitled to final judgment for said damages and costs, against the plaintiff and the sureties on his replevin bond.  Judgment accordingly.

*Freeman & Jackson*, for appellant :

The facts found by the court do not show a lien existing in favor of either of the plaintiffs in the suits against Millard.  Such a lien was not given them by chapter 215, General Laws of 1860 ; for it has been decided by this court that that statute did not create the lien, but merely provided an easier and more adequate method of enforcing the lien given by section 12, chapter 153, R. S. ; *Paine vs. Gill,* 13 Wis., 561.  No lien was acquired then by White, Cardiff and Murphy, by filing their petitions ; that was merely a part of the remedy for enforcing a lien already existing.  Their lien, if any, must therefore have been acquired under sec. 12, chap. 153, R. S.  But no lien could be acquired under that section except by "complying with the requirements" of that chapter.  The performance of the labor did not of itself create the lien.  The court found no facts showing a compliance with those requirements.  To entitle them to such a lien, they must have served a written notice upon the plaintiff (who was the owner of the property), of their claim upon Millard (who was a contractor to get it out, &c.), accord-

ing to the requirement of section 2 of that chapter, and must also have filed their petitions in the office of the clerk of the circuit court in the proper county, as required by section 5. p. 181.) · The filing of their petitions in the city clerk's office of the city of Oshkosh was not a compliance with the provisions of that chapter, since that chapter contained no such provision. 2. The plaintiff had a lien upon these logs for supplies furnished by virtue of his contract with Millard, from December 19, 1859, or from the time thereafter when they were cut (2 Kent's Comm., 813; 11 Wend., 77); and having lawfully acquired the possession, he could retain it until his debt was satisfied. 6 Hill, 425; 4 Denio, 332; Story on Bail., § 294. This lien was good as against all persons having notice thereof. 2 Kent's Comm., 817; 6 Term R., 14. Again, this agreement is in its nature and effect a chattel mortgage. *Macomber vs. Parker*, 14 Pick., 497; *Dunning vs. Stearns*, 9 Barb., 630; *Langdon vs. Buel*, 9 Wend., 80. The moment it was filed, it became notice to all persons. The plaintiff had a right to reduce the property to possession at any moment after the agreement was made. R. S., chap. 45. "A mortgage filed pursuant to the statute shall be as valid and binding upon all persons as if the property thereby mortgaged had immediately upon the execution of the mortgage, been delivered to, and the possession thereof retained by, the mortgagee." Sec. 1, chap. 166, Gen. Laws of 1859. 3. The rights thus acquired by the plaintiff could not be divested or modified by a subsequent statute. *Pattin vs. Prejon*, 7 La., 301; *Trustees of Dartmouth College vs. Woodward*, 4 Wheat., 518; 8 id., 1 ; 7 Cranch, 164; Const. of Wis., Article I, sec. 12. 4. Chapter 153, R. S., is a general statute. Can the legislature by a subsequent act provide for enforcing it by a different method in some counties of the state from that prescribed for the other counties ? Would not such an act be a *private* statute? 1 Blacks. Comm., 86; 1 Kent's Comm., 506; Dwarris on Stat., 629. Such a statute does not bind strangers in interest to its provisions. They are not bound to take notice of a private act, even though it contain no clause expressly saving their rights. 1 Kent's Comm., 507; 1 Met., 175; 2 Johns., 263; 8 id.,

January Term, 554; 2 Blacks. Comm., 345.  5.  Counsel contended that the
1862.
—————— decision of the court in *Paine vs. Gill* was erroneous, and
PAINE     that chapter 215, Laws of 1860, was designed to *create* a lien
v.
WOODWORTH. upon the species of property therein named, within the coun-
ties of Shawano, Waupaca, &c., for the kind of labor there-
in named, and to provide a method of perpetuating the lien
and a remedy for its enforcement, as well as to provide fur-
ther for enforcing liens existing by virtue of any other law.
6.  The fifth conclusion of law found by the court is bad :
(1) Because the question of damages is one of fact, and not
of law.   (2) The waiving of a return of the property by the
defendant did not change the nature of the judgments against
Millard, and make them resulting damages for the detention
of the property in this action.   Suppose these judgments had
been for $1000 each; could the defendant, by simply waiv-
ing a return of the property, have his damages assessed at
$3000, and take judgment against the plaintiff and his sure-
ties for that amount—the property being worth but $1200 ?
Does the defendant, by waiving a return of the property,
make the plaintiff a debtor of all the lien creditors ? (3) The
defendant could not waive a return of the property, and take
a judgment for its value even.   He is entitled, if successful,
to a return of the property, or the value thereof *in case a re-
turn cannot be had*, and damages for taking and detaining the
same.   R. S., chap. 132, sec. 31 ; chapter 134, ·sec. 4.   In
this case he does not claim damages, and therefore none
could be assessed.   R. S., chap. 132, sec. 11.   For the same
reasons, the sixth finding and the judgment are erroneous.
*Dwight vs. Enos*, 5 Seld., 470 ; *Seaman vs. Luce*, 23 Barb.,
240; Howard's Code, p. 410.

   *Bouck & Edmonds*, for respondent.

May 15.       *By the Court*, PAINE, J.   This case depends upon the
same question that was decided by this court in *Paine vs.
Gill*, 13 Wis., 561.   The counsel for the appellant has criti-
cised the opinion in that case, but he has failed to convince
us that it is wrong.   He objects particularly to the position
there taken, that the workmen upon the lumber would have
had a lien on it prior to the passage of sec. 12, chap. 153 of the

Revised Statutes. He urges that the latter section provides only that the workmen might have such a lien by complying with the requirements of that chapter; and therefore insists that they could not have it by complying with the requirements of chapter 215, Laws of 1860, only. But we have no doubt that after work had been done for which the party was entitled to a lien under the Revised Statutes, and before the expiration of the time within which he might proceed to enforce it, it would be competent for the legislature to provide a new and more efficacious remedy, and that such lien might then be enforced according to that. And the objection that the party had not complied with the old statute, would be of no avail. That it is competent for the legislature to change the remedy in such cases, is too well understood to need argument.

The whole merits of the controversy depend upon the question whether, where a party has contracted with another for the delivery of a lot of logs at a particular place, and for a prior lien on those logs as a security for a debt, such lien, so contracted for, cuts off the lien which the law gives the workmen who perform the very work on the logs necessary to a fulfilment of the first contract. As we said before, we think it does not; but that it was the intention of the statute to give such workmen an absolute lien, where they were employed to do the work by any one having competent authority, as against everybody, upon the principle that their labor enhanced the value for the benefit of everybody who had any interest in the property. It was designed to make it like the sailor's lien for wages. Of this it is said, "They may disregard bottomry bonds, and pursue their lien for wages afterwards, even against a subsequent *bona fide* purchaser. It follows the ship and its proceeds into whose hands soever they may come by title or purchase from the owner. Their demand for wages takes precedence of bottomry bonds, and is preferred to all other demands, for the same reason that the last bottomry bond is preferred to those of a prior date. Their claim is a sacred lien, and as long as a single plank of the ship remains, the sailor is entitled, as against all others, to the proceeds as a security for his wages;

January Term, for by their labor, *the common pledge for all the debts is pre-*
1862.          *served."*   3 Kent, 197.

FORD
v.
MITCHELL.
The labor of workmen in running and rafting logs, &c. is of a very similar nature, and the design of the statute was to give them a like lien. And whosoever makes such a contract as the plaintiff made in this case, which contemplates the performance of this kind of labor for the benefit of both the contracting parties, must be held to intend that the lien of the laborers shall attach according to the law, and that his own shall be subject to it, precisely as one taking a bottomry bond or mortgage upon a vessel, must be held to contemplate that such vessel will continue subject to the lien for sailors' wages thereafter performed, which will take precedence of his own.

We see no error in the case, and the judgment is affirmed, with costs.