Gross vs. Eiden, imp.

*November 22 — December 13, 1881.*

LIEN ON LUMBER.  *(1) What "lumber" includes.   (2) Privity of contract required between laborer and log-owner.   (3) Case stated.   (4) Certain statutes construed.*

1. The word lumber, in sec. 3341, R. S., includes shingles.
2. That section, which gives a lien upon lumber to any person performing manual labor thereon, "for or on account of the owner, agent or assignee thereof," must be construed as requiring some privity of contract between the laborer and the owner of the logs.

3. M. manufactured shingles for E. at a specified price per thousand, out of E.'s lumber and by the use of E.'s mill; and plaintiff was employed by M. in such manufacture. When this action was commenced against M. and E., M. owed plaintiff a certain sum, but nothing was due M. from E. *Held*, that plaintiff had no lien on the shingles, under said sec. 3341. *Paine v. Gill*, 13 Wis., 561; *Paine v. Woodworth*, 15 id., 298; and *Battis v. Hamlin*, 22 id., 669 — distinguished; and a remark *obiter* in *Babka v. Eldred*, 47 Wis., 189, withdrawn.

4. Ch. 62 of 1880 and ch. 330 of 1881 do not give any lien upon the *lumber* into which logs and timber have been manufactured.

APPEAL from the Circuit Court for *Portage* County.

Action to enforce a laborer's lien upon shingles. The case is sufficiently stated in the opinion. From a judgment in favor of the defendant *Eiden*, the plaintiff appealed.

The cause was submitted for the appellant on the brief of *G. W. Cate*. He contended, *inter alia*, that, as between these parties, McCormick must be regarded as having been *Eiden's* agent for the manufacture of the shingles, within the meaning of sec. 3341, R. S. *Paine v. Gill*, 13 Wis., 561; *Battis v. Hamlin*, 22 id., 669; *Babka v. Eldred*, 47 id., 189. He was in the use and occupation of *Eiden's* mill for the purpose of working *Eiden's* timber up into shingles. He managed *Eiden's* business for him in that particular, having authority to use the mill, saw up the timber and pack the shingles for him. It is the ordinary way of doing the business. In the same way the lumber-owner employs an agent to raft the lumber and run it to market, at a given sum per thousand feet, the agent employing the men required for the purpose. The vast business of lumbering is almost entirely done by contracts of this kind. And for the labor of handling the lumber, manufacturing, sorting, piling, rafting and running it, and manufacturing pickets, lath, shingles, etc., there is no other lien than that given by this statute. And the construction which the appellant claims, has been adopted by the business of the country for more than a quarter of a century.

The cause was submitted for the respondent on the brief of *Jones & Sanborn*.

COLE, C. J.  This action was commenced in a justice's court to enforce a lien upon shingles for labor performed in their manufacture.  The shingles were owned by the defendant *Eiden*, and were manufactured for him by his codefendant, McCormick, under a special contract, at a specified price per thousand.  *Eiden* furnished the mill and the timber out of which the shingles were manufactured.  The plaintiff was employed by McCormick, who was indebted to plaintiff when the action was commenced in the sum of $45; but there was nothing due from *Eiden* to McCormick.  On appeal, the circuit court held that the plaintiff, on the facts proven, had no lien upon the shingles.  The learned counsel for the plaintiff insists that this decision is erroneous.  He claims that the plaintiff was entitled to a lien upon the shingles under section 3341, R. S.  That section plainly gives a lien where a person performs labor upon lumber for or on account of the owner, agent or assignee thereof.  The difficulty, however, in bringing the case within that section is, that there is no evidence to justify us in holding that McCormick, in employing the plaintiff, acted on behalf of or as the agent of *Eiden*.

It will be observed that the section gives the lien where the person performs the labor "for or on account of the owner, agent or assignee" of such lumber; that is, as we understand the provision, the laborer must be employed by the owner or by some one acting for him, or on his behalf.  In this case it will be borne in mind that the plaintiff was employed by Mr. McCormick himself to labor for him as his servant, and not as the servant of *Eiden*.  McCormick was the party who was responsible for his wages, and against whom a personal judgment was rendered therefor.  But the same counsel insists that, as between the plaintiff and *Eiden*, the owner of the shingles, McCormick should be treated as the latter's agent within the meaning of this section.  He says that because *Eiden* furnished McCormick the mill and the timber of which he was the owner, and out of which, or by means of

which, the shingles were manufactured under the contract, McCormick really represented *Eiden* in the business, in employing the men to do the work, as fully as though expressly authorized to employ them by *Eiden*. And he relies upon the cases of *Paine v. Gill*, 13 Wis., 561; *Paine v. Woodworth*, 15 Wis., 298; and *Battis v. Hamlin*, 22 Wis., 669, in support of that position.

In the first two cases the laborers were employed by parties who had contracted with Paine to sell and deliver logs at a particular time and place, it being agreed that Paine should have a prior lien upon the logs for his advances upon the contracts from the time they were cut. The principal question in both cases was, whether this lien so contracted for was prior in right or superior in law to the lien which the statute gives the laborer who performs the very work necessary to a fulfilment of the contracts. The court decided it was not, but that the intention of the statute was to give the laborers an absolute lien upon the logs when employed to do work upon them by one having competent authority. There could be no doubt, on the facts in those cases, but that the vendors who contracted to sell and deliver the logs, and who employed the men to work upon them, were to be deemed the owners of the property for the purpose of supporting the lien of the workmen. The cases seem to be quite unlike the one at bar.

*Battis v. Hamlin* was an action of replevin brought by the owners of a lot of shingles against a constable who had seized them upon a lien attachment. The plaintiffs in the replevin suit offered to show on the trial that the plaintiff in the attachment never performed any work upon the shingles in dispute; that he was never employed by them in any manner, but that the shingles were manufactured for them by Watson and Garfield at so much per thousand; and that they had paid Watson and Garfield in full for manufacturing the shingles before notice that Watson and Garfield were indebted to the plaintiff in the attachment for labor upon them. One question in the case

was, whether, under the circumstances, the action of replevin could be maintained against the constable who had seized the shingles under a lawful writ directing him to take the identical property in controversy. The court held it could not be maintained; that the writ was a sufficient protection to the officer, who was not bound to show, in order to make out his defense, that the plaintiff in the attachment suit had a valid lien upon the shingles; following *Griffith v. Smith*, 22 Wis., 647. From this statement it will be seen that the court declined to go into the merits of the attachment suit, or to determine whether the plaintiff in that action had a valid lien or not. The same ruling was made in *Union Lumbering Co. v. Tronson*, 36 Wis., 126.

We have no difficulty whatever in holding that shingles are included in the generic word "lumber," as used in the statute. But we do not see how it can properly be said, upon the facts of the case, that the labor was performed on the shingles for or on account of the owner or of his agent. The statute seems to imply a privity or some contract relation between the laborer and the owner of the property, where the lien is given; and unless it can be said that McCormick, who hired the plaintiff to work upon the shingles which he was himself manufacturing for *Eiden*, represented the latter in employing men to fulfil his contract, we do not see that any privity existed as between *Eiden* and the plaintiff. The fact that McCormick manufactured the shingles out of the timber and at the mill owned by *Eiden*, does not seem to affect the point we are considering. The real question is, Was the labor performed for or on account of *Eiden*, or of McCormick? Upon that point there is no room for doubt that it was actually performed for McCormick, who was neither the agent nor assignee of *Eiden* in employing men to make the shingles.

In *Babka v. Eldred*, 47 Wis., 189, there is an intimation in the opinion of Mr. Justice Lyon that possibly the lien is given, under the restrictions of the statute, where the labor is per-

formed for a subcontractor. But that was an incidental remark, made by him when his attention was not specially drawn to the construction of section 3341. We have already said that the learned counsel for the plaintiff claimed the lien under that section. For the reasons which we have given, we think this claim cannot be sustained.

In our examination of the case we had some doubt whether the lien could not be sustained under chapter 62, Laws of 1880, and chapter 330, Laws of 1881. Those statutes are somewhat different in their language from the phraseology of chapter 154, Laws of 1862, which was considered and passed upon in the *Babka Case.* They attempt to give a lien, among other things, for labor performed in manufacturing logs and timber into lumber, but fail to extend the lien to the manufactured product, strangely confining it "*to the logs and timber.*" Of course it is an absurdity to say that the laborer shall have a lien upon logs and timber for work done in manufacturing them into lumber. But this is the statute law, and it is for the legislature, not the courts, to give the lien for such labor upon the manufactured article. We cannot by construction cure what appears to be an omission or defect in the statute.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.