RICHARD DEEVES AND SON, Respondent, *v.* THE MANHATTAN LIFE INSURANCE COMPANY, Appellant.

Building contract — rights of parties thereto — action by builder for part of agreed price — when owner estopped from interposing delay in completion of work as a defense.

Where a building contract provides that the material shall be furnished and the labor performed for a gross sum and by a day fixed in the contract for the full completion thereof, and the contractor fails to perform by the day so fixed, the owner may insist on his strict legal right and put an end to the contract.

If, however, the owner voluntarily permits the contractor to proceed with such contract and accepts the materials and labor thereafter furnished and performed, and the contractor fully performs his contract, except as to the time provided for the completion thereof, he is estopped from interposing the delay as a defense to the action for the agreed price. But the owner is not without remedy. He may recover his damages by an independent action or by counterclaim in an action brought by the contractor for the contract price.

When a defendant has an election to set up a cross claim of any kind to diminish or overcome the claim of the plaintiff, or to bring an independent action thereon, such claim, if asserted, must be set up as a counterclaim in the action, whether it constitutes what was formerly denominated a recoupment, or any other claim coming within the Code definition of a counterclaim. If a counterclaim is relied upon, it must be alleged in the answer and not left to inference.

Plaintiff entered into a contract with defendant to tear down an old building and erect a new one. The contract contained provisions, among others, to the effect that in addition to previous stipulations, defendant would pay an additional fixed sum to plaintiff "in full for the performance of said contract and the completion of said building at whatsoever time completed." It was also agreed that in case the building was not completed at the stipulated time, plaintiff would

relinquish to the defendant, as stipulated damages, one-half of such additional sum.  The contract work was fully performed in other respects but was not completed within the time specified and defendant refused to pay the sum agreed upon as stipulated damages in case of such failure.  In an action to recover such moneys, defendant alleged that the plaintiff had been paid in full for all the services rendered and all sums due under the contract, but did not plead a counterclaim or in any way allege that it had been damaged by reason of plaintiff's delay.  *Held,* that the contract did not contain two independent alternate agreements; that the defendant was put to its option either to assert its damage, liquidated or otherwise, in its answer or reserve its claim for an independent action, and that the allegation of plaintiff's failure to perform in the time agreed on did not constitute a defense.

*Deeves & Son* v. *Manhattan Life Ins. Co.,* 122 App. Div. 888, affirmed.

(Argued March 2, 1909; decided May 11, 1909.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 8, 1907, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward S. Rapallo* for appellant.   Nothing in the phraseology of the fifth clause of the contract militates against defendant appellant's claim that plaintiff respondent failed to prove a cause of action or sustains the latter's proposition that defendant has no defense to this action and can at most have a counterclaim.  (*Dunn* v. *Morgenthau,* 73 App. Div. 147; *Couch* v. *N. B. Assn.,* 109 App. Div. 856.)

*John Frankenheimer* for respondent.   The defendant having permitted the plaintiff contractor to complete the contract after the stipulated time, was thereby estopped from setting up such delay in performance as a defense to this action.   It had the right, however, to counterclaim any damages it may have suffered from such delay in completion, but having deliberately omitted to plead any such counterclaim, judgment was properly directed in favor of the plaintiff upon

the conceded facts. (*Dunn* v. *Steubing,* 120 N. Y. 232; *G. L. Co.* v. *Deeves,* 72 Hun, 171; *Kenny* v. *Monahan,* 53 App. Div. 421; *C. W. Co.* v. *V. R. Co.,* 104 App. Div. 568; *Beyer* v. *Huber Co.,* 115 App. Div. 342; *Ogden* v. *P. I. Works,* 91 App. Div. 394; *Nat. F. Ins. Co.* v. *Hughes,* 189 N. Y. 91; *Walkup* v. *Mesick,* 110 App. Div. 326; *Brown* v. *Gallaudet,* 80 N. Y. 413.) Plaintiff could not be deprived of the balance payable to it under the contract except as liquidated damages for failure to complete within the stipulated time. Defendant was bound to assert its claim to such liquidated damages in its answer by way of counterclaim. (*Curtis* v. *Van Bergh,* 161 N. Y. 47; *Ward* v. *H. R. B. Co.,* 125 N. Y. 230; *Dunn* v. *Morgenthau,* 73 App. Div. 147; 175 N. Y. 518; *Couch* v. *N. B. Assn.,* 109 App. Div. 856; *Lennon* v. *Smith,* 124 N. Y. 578.)

CHASE, J. The parties to this action entered into a written contract January 2, 1902, upon which this action is brought. The party of the first part in said contract is the defendant appellant, and the party of the second part therein is the plaintiff respondent. The contract is too long to justify our quoting it in full, but the questions discussed on this appeal depend to such an extent upon its construction that it is necessary to refer to many of its terms and to quote several of its provisions, which we do in the order in which they are contained in the contract.

It provides: "*First*. The said party of the second part agrees to tear down and remove the building upon the premises (No. 70 Broadway and extending from Broadway to New street) of the party of the first part, to make all the excavations for cellar and foundations for the new proposed building on said premises, shore up or otherwise properly protect all adjacent property, sink the caissons and build the foundations and erect, complete and furnish the proposed new building for the party of the first part upon said premises No. 70 Broadway, and extending from Broadway to New street, and make all the proposed alterations and additions in the building of

the party of the first part Nos. 64, 66 and 68 Broadway and the connections between said last-named building and the proposed new building and to provide on the said premises all the materials for the foregoing; all of the foregoing shall be done by the party of the second part in the best workmanlike manner and to the best of their ability and in every respect both as to work and materials in accordance with the plans and drawings and the specifications."

It further provides that all of the work, labor and materials except the mason work and certain subsidiary work and the supplying of materials for said mason work shall be sublet by the party of the second part to responsible sub-contractors selected by competition in a manner satisfactory and subject to the approval of the party of the first part and that the party of the second part "guarantees the proper performance in all respects of the contracts so made by them with each and all of said sub-contractors in accordance with the specifications."

It further provides the time when payments shall be made to the party of the second part on account of work performed and materials furnished under said sub-contracts and on account of said mason work and materials. It further contains the ordinary provisions found in building contracts relating to alterations and extra work. It further provides that the party of the second part guarantees to hold the party of the first part harmless against any damages, costs and claims occasioned by any negligence "of the party of the second part or their employees, or of the sub-contractors or their employees;" and it also provides that the party of the second part shall "guarantee the party of the first part in case it makes payments in accordance with the terms of this contract against all mechanics' liens and liens for labor, services or materials on the part of the sub-contractors, their employees or the employees of the party of the second part or any person or corporation performing labor or supplying materials in the prosecution of the work hereunder.

It further provides: "The party of the second part agrees

that said building and alterations shall be erected, completed and furnished according to the terms of this contract and ready for acceptance by the party of the first part on or before the first day of March, 1903, provided the party of the second part is allowed to enter upon the premises on or before the first day of May, 1902, except for delay caused by fire or strikes not occasioned by the fault of the party of the second part or its sub-contractors. The party of the second part hereby agrees and guarantees that said building shall be practically so completed on or before said first day of March, 1903, except the tower, which shall be completed on or before March 15, 1903; and in case said building and tower be not practically completed on said days respectively the party of the second part will *relinquish to the party of the first part as stipulated damages* which are hereby agreed to, the sum of ten thousand dollars ($10,000) of the twenty thousand dollars ($20,000) compensation payable to the party of the second part as hereinafter mentioned."

It further provides: " The party of the second part hereby further expressly guarantees to the party of the first part that the total cost to the party of the first part of the said new building and the alterations of the present building shall not exceed in all the sum of five hundred and fifty-five thousand nine hundred and sixty eight dollars (\$555,968)."

It further provides that mason work shall include " Bridges and sidewalk coverings. Common brick work. Face brick work. Fire proofing. Concreting, &c." and that the said $20,000 is included in the guaranteed maximum total cost of the building.

It further provides: " All saving of expense below present estimate and below said guaranteed amount of cost to inure to the benefit of the party of the first part; all cost above said guaranteed amount to be paid by the party of the second part."

It further provides: " Eighth: *In consideration of the performance by the party of the second part of all of the foregoing agreements and conditions by it to be performed*

*and kept, and of the fulfillment of the foregoing guarantees the party of the first part agrees, in addition to the payments under the sub-contracts above mentioned and the costs of materials and mason work below mentioned to pay to the party of the second part the sum of twenty thousand dollars ($20,000) which shall be in full for the performance of said contract and the completion of said building at whatsoever time completed including all office expenses of the party of the second part and of such office assistance as it may require in performance of this contract payable as follows, viz.: Five thousand dollars ($5,000) when the roof is tight; five thousand dollars ($5,000) when the work is practically finished; and the remaining ten thousand dollars ($10,000) when the work is completely finished according to the certificate of the architect."*

It further provides that the party of the first part shall pay for the mason work and materials therefor, the actual cost to the party of the second part " of the work, labor and material not including any allowance for the personal services or time of Mr. Richard Deeves or his son."

It further provides that " The party of the second part will keep separate set of books of all accounts for labor, materials and all expenditures relating to the entire work to be done under this contract including said mason work and materials and the accounts of all sub-contractors, which books and accounts shall be at all times subject to the inspection of the party of the first part or its representatives; and shall eventually be the property of the party of the first part."

It is conceded that the contract was not completed in the time specified in said contract, but it is also further conceded that the contract was otherwise fully completed, and that payments were made thereon from time to time after the expiration of the time specified for the completion thereof. The defendant failed to pay ten thousand dollars of the amount prescribed by the contract, and this action is brought on the contract to recover the ten thousand dollars so unpaid. It is alleged in the complaint that the contract was not performed

in the time provided by the contract, but that it was thereafter fully performed, and that the time for the full completion of the contract was waived by the defendant.

Where a building contract provides that the materials shall be furnished and the labor performed for a gross sum and by a day fixed in the contract for the full completion thereof, and the contractor fails to perform by the day so fixed, the owner may insist on his strict legal right and put an end to the contract. (*Dunn* v. *Steubing*, 120 N. Y. 232.)

If the owner voluntarily permits the contractor to proceed with such a contract and accepts the materials and labor thereafter furnished and performed, and the contractor fully performs his contract, except as to the time provided for the completion thereof, he is estopped from interposing the delay as a defense to the action for the agreed price. One cannot receive and enjoy the benefit of the labor and materials so furnished under the contract and refuse to pay for them simply because the contract was not completed within the time specified. (*Dunn* v. *Steubing, supra*; *Kenny* v. *Monahan,* 53 App. Div. 421; affirmed, 169 N. Y. 591; *General Electric Co.* v. *National Contracting Co.*, 178 N. Y. 369; *Granniss & Hurd Lumber Co.* v. *Deeves*, 72 Hun, 171; *Crocker-Wheeler Co.* v. *Varick Realty Co.*, 104 App. Div. 568.) This does not mean that an owner is without remedy. He may recover his damages by an independent action or by counterclaim in an action brought by the contractor for the contract price. (*Kenny* v. *Monahan, supra*; *Granniss & Hurd Lumber Co.* v. *Deeves, supra*; *Crocker-Wheeler Co.* v. *Varick Realty Co., supra*; *Ogden* v. *Pioneer Iron Works*, 91 App. Div. 394.)

The defendant does not deny that the rules of law stated are just and equitable and firmly established by the courts. It insists, however, that they are only applicable to contracts where the consideration thereof is entire and a gross sum to cover all promises and agreements contained therein and that such rules have no application to this action. The defendant construes the contract as containing two independent agree-

ments — the first by which the plaintiff promises to furnish the material and labor for the building, the consideration for which is the cost thereof, and the second including the promises therein termed guaranties, the consideration for which is $20,000 if the material and labor are furnished and performed within the time specified, and $10,000 in case the plaintiff fails to furnish and perform the same within such time.

The trial court and the Appellate Division have construed the contract as one obligation, including many details, the consideration for all of which is an agreed sum equal to the aggregate amount of the sub-contracts, the cost of mason work and material and an additional lump sum of $20,000.

The word "guarantee," used in the contract, is not intended in a technical legal sense, but as a synonym of "agree" or "promise." The agreements for which the defendant claims that the $20,000 was to be paid include beside the obligation to perform the contract in the time specified the plaintiff's liability for all damages occurring from negligence and any other contingencies growing out of the contract, the further obligation to pay all cost above the guaranteed maximum amount, the compensation for keeping a separate set of books for this contract involving more than half a million of dollars, and all office expenses and office assistance. It also includes all compensation for the personal services and time of Mr. Richard Deeves and his son, who superintended the erection of the building under the contract.

It will be seen by the first paragraph of the contract quoted that the plaintiff promised and agreed to perform everything required by the contract and became responsible to the defendant therefor. The other provisions thereof affecting the building relate to detail of performance.

It will be further seen by the eighth provision of the contract quoted that the plaintiff is to be paid the consideration for the performance " Of all of the foregoing *agreements and conditions* * * * in addition to the payments under the sub-contracts above mentioned and the cost of material and mason work below mentioned * * * the sum of twenty

thousand dollars ($20,000) *which shall be in full for the performance of said contract and the completion of said building at whatsoever time completed.*"

We think, therefore, that the Trial Term and the Appellate Division were right in holding the defendant liable under the contract for the full contract price without dividing it into parts or separate items and attempting to construe the contract accordingly.

. Where a building contract imposes upon the contractor the ordinary obligations of furnishing all the materials and doing all the work required therein and of being responsible for the obligations incident to the erection of a building, the rules of law applicable thereto, where the compensation is fixed by the cost of the material and work, and a specified percentage or amount in addition thereto, are the same as where the compensation is a gross sum named in the contract. The office expenses and special superintendence are a necessary and important part of the construction account. All of the promises or guaranties in the contract are common to such contracts and so connected with the other agreements relating to the furnishing of material and the performance of labor that they should not be separated therefrom.

As we construe the contract it does not contain two independent alternate agreements, one requiring the full completion of the contract by March 1, 1903, and the other permitting the completion of the contract at some undesignated time thereafter. The materials having been furnished and the work having been performed (except as to the time of the performance thereof) as provided by the contract, the complaint stated a cause of action and the defendant was put to its option either to assert its damages, liquidated or otherwise, in its answer, or reserve its claim for an independent action. (Cases above cited.) When a defendant has an election to set up a cross claim of any kind to diminish or overcome the claim of the plaintiff, or to bring an independent action thereon, it necessarily follows that such claim, if asserted, must be set up as a counterclaim in the action, whether it constitutes what

was formerly denominated a recoupment, or it is any other claim coming within the Code definition of a counterclaim. (*Gillespie* v. *Torrance,* 25 N. Y. 306, 309; *Krom* v. *Levy* 1 Hun, 171, 175.) The right to recoup, which is asserted in cases of this kind, means simply the right to plead a counterclaim under the Code. (*Ely* v. *Spiero,* 28 App. Div. 485, 488; Pomeroy's Remedies and Remedial Rights, section 736.) If a counterclaim is relied upon, it must be alleged in the answer and not left to inference. (*Rice* v. *Grange,* 131 N. Y. 149.)

Recoupment always implies that the plaintiff has a cause of action, but the defendant alleges that he, too, has a cause of action growing out of a breach of some other part of the contract upon which the action is founded, or for some other cause connected with the contract, and it is in the nature of a cross action. (*Vassear* v. *Livingston,* 13 N. Y. 248, 257.) In the case last cited the defendant claimed that the plaintiff's assignor had not performed a contract to engrave certain portraits within the time provided thereby, and he further claimed that he had put an end to the contract, and that he refused to receive the engravings. The defendant's answer set forth the facts as claimed by him and asserted that he had been damaged to an amount equal to the amount of the contract, and the facts were held to be a defense and not a recoupment. The facts alleged in the answer in that case would not have sustained an independent cause of action. The claim of the defendant in this case is not at all similar to the claim of the defendant in the *Vassear* v. *Livingston* case. A defendant, by omitting to assert a claim to recoup or counterclaim its damages in its answer, must be presumed to have elected not to allow such damages in the reduction or extinguishment of the plaintiff's claim. The statement of facts made by the defendant in the answer in this case was not intended in recoupment or counterclaim. It was stated and not denied on the argument that the defendant had commenced a cross action for its damages against the plaintiff. The answer as interposed by the defendant contains certain denials and then alleged the

failure of the plaintiff to perform its contract within the time provided therefor, and it further alleged: " That the plaintiff had been paid in full for all services rendered and has paid in full all sums due by the terms of the contract between the parties." It did not plead a counterclaim or in any way allege that it had been damaged by reason of the plaintiff's delay in completing the contract. In its pleading, and at all times since, it has intentionally, consistently and clearly relied upon the plaintiff's failure to perform in the time agreed upon as a defense to its action upon said contract. It is not a defense. As the question of damages is not before the court it is not necessary to consider what proof, if any, would be required to sustain a claim for liquidated damages if it had been asserted and claimed by the defendant.

The judgment should be affirmed, with costs.

Cullen, Ch. J. (dissenting). I agree with my brother Chase that the contract under which this litigation arises was in law an ordinary contract by which the plaintiff agreed to construct and complete a building for the defendant. The only peculiarity of the contract is the method by which the compensation that the defendant should make to the plaintiff was to be ascertained and determined. Tersely stated, the contract was this: It contemplated that the work other than the mason work should be done by sub-contractors, but such sub-contractors should be solely under contract with plaintiff. The plaintiff was to be paid the amount it might have to pay on the sub-contracts, the actual cost it might pay out for the mason work, and an additional sum of $20,000. This $20,000 was to be paid, $5,000 thereof when the roof was tight, $5,000 when the work was practically finished, and the remaining $10,000 when the work was completely finished according to the certificate of the architect. It also agreed that the cost of the building, including its own compensation, should not exceed $555,968, and that it would complete the work on or before March 1st, 1903. This uncertainty as to what might prove to be the compensation of the plaintiff in no way affected

the rights of the parties under the contract so far as those rights are involved in this action.

The complaint set forth two causes of action ; the first for the final payment of the $10,000 above mentioned, but the second was withdrawn at the trial. The complaint stated that the building was not completed by March 1st, 1903, but in excuse thereof alleged that the delay was caused by strikes (a delay which, under the terms of the contract, was not imputable to the plaintiff), by misconduct on the part of the defendant in failing to give possession of the premises, and other defaults not necessary to mention. To this complaint the defendant answered setting forth a provision of the contract by which the plaintiff agreed that the building should be completed on or before March 1st, 1903, and in case the said building should not be completed on said date, the plaintiff should relinquish the sum of $10,000 of the $20,000 compensation payable under the contract ; that the building was not completed at said time, and denied the allegations of the complaint excusing the delay.

On the trial the plaintiff put the contract in evidence and gave testimony to the effect that it fully completed the work with the permission of the defendant about the 1st of January, 1904. It gave no evidence to excuse the delay in finishing the building. A motion for a nonsuit was denied and the plaintiff moved for the direction of a verdict in its favor before the defendant entered upon its proof. The defendant asked leave of the court to introduce evidence of its defense and offered to prove that it had suffered damage of more than $20,000 by the failure of the plaintiff to complete the building at the contract time, and also offered to prove that the delay was not due to any act of the defendant. The court denied the right of the defendant to introduce any evidence and directed a verdict against it for the amount claimed. The judgment entered on that verdict has been affirmed by the Appellate Division.

It is conceded that while the defendant, by suffering the plaintiff to continue the prosecution of the work after the

expiration of the specified time to complete performance, waived the right to terminate the contract for such default, it did not waive its claim for any damages caused by plaintiff's delay. (*Dunn* v. *Steubing*, 120 N. Y. 232.) It is also conceded — indeed the learned counsel for the respondent insists — that the sum agreed to be relinquished by the plaintiff was liquidated damages. (*Curtis* v. *Van Bergh*, 161 N. Y. 47.) With these concessions it is plain that the only question presented on this appeal is one of pleading. If the facts set forth in the defendant's answer constituted a defense to the plaintiff's claim it should have been allowed to give evidence. If not, then the case was properly disposed of by the trial court.

The theory on which the trial court acted, and which the Appellate Division approved, seems to be that the defendant, in addition to alleging the covenant in the contract and its breach by the plaintiff, was required to plead it as a counterclaim, or at least as a set-off, and that because it had not so done it was not entitled to claim any benefit under its answer. I know of no principle on which this theory can rest. The defendant's plea was one of recoupment strictly, for it was the breach of a condition of the same contract on which the plaintiff sought to recover. Offsets and counterclaims are the creations of statutes; the latter having been first brought into existence by the Code of Procedure in 1848. The practice of recoupment was evolved by the courts at common law. It is not set off. " At common law, and independently of the statutes of set-off, a defendant is in general entitled to retain, or claim by way of *deduction*, all just allowances or demands accruing to him, or payments made by him, in respect of the *same* transaction or account, which forms the ground of action. But this cannot be termed a *set-off* in the strict legal sense of the word, because it is not in the nature of a *cross* demand or *mutual* debt, but rather constitutes a deduction, rendering the sum to be recovered by the plaintiff so much less." (Chitty on Pleadings, vol. 1 [16th Am. ed.], p. 595.) To the same effect see Waterman on Set-off, Recoupment and Counterclaim (§§ 413 *et seq.*). " It is not an independent

cross-claim like a separate and distinct debt or item of account due from the plaintiff; but is confined to matters arising out of, or connected with, the contract or transaction which forms the basis of the plaintiff's claim." (Waterman, § 424.) "It is not a question of set-off, as the plaintiff's counsel seems to suppose, but of recoupment of damages. When the demands of both parties spring out of the same contract or transaction, the defendant may recoup, although the damages on both sides are unliquidated; but he can only set off where the demands of both parties are liquidated, or capable of being ascertained by calculation." (*Batterman* v. *Pierce*, 3 Hill, 171, 174.) Under our present system counterclaim may include any matter that might be the subject of recoupment or set-off, but it is not exclusive. Recoupment still exists (*Vassear* v. *Livingston*, 13 N. Y. 248), and a party has his election for the breach of a contract on which the plaintiff sues either to recoup or counterclaim, or bring his own independent action. Under the authorities in the lower courts recoupment might be more advantageous to a defendant than counterclaim, for the first would not prevent the maintenance of a cross suit for damages (*Naylor* v. *Schenck*, 3 E. D. Smith, 135), while the second would (*Ansorge* v. *Kaiser*, 22 Abb. [N. C.] 305), though, of course, the determination of the suit first tried would necessarily be conclusive of the other. Therefore, if the facts pleaded by the defendant would have stated a good cause of action in an independent suit, or a good counterclaim had it been pleaded as such, it set up a good defense of recoupment.

There is no defect in the answer. Doubtless, if the contract had contained no covenant for liquidated damages, it would have been necessary to allege and prove damages by the plaintiff's delay. But such is not the rule where the contract provides for liquidated damages. It is sufficient to allege the covenant and its breach. Such was the rule under the old system of pleading. (Chitty on Pleadings [16th Am. ed.], vol. 2, p. 204.) Even in an action for penalties under the old practice it was sufficient to aver the breach of the condition,

leaving damages to be proved at the trial. (2 R. S. p. 378, §§ 5 and 6; *Beers* v. *Shannon,* 73 N. Y. 292.) I can find nothing to show that this rule of pleading has ever been changed. On the contrary, it has been expressly held by this court (*Begley* v. *Peddie,* 16 N. Y. 469) that in an action for liquidated damages on the breach of a covenant, it is not necessary to prove any actual damages, and ordinarily (though there are exceptions) it is not necessary to allege that which it is not necessary to prove. (See, also, opinion of GRAY, J., in *Ward* v. *Hudson R. Bldg. Co.,* 125 N. Y. 230, and of VANN, J., in *Tode* v. *Gross,* 127 N. Y. 480.)

Some reliance is placed by the respondent on the method of pleading recoupment at common law, but a mistaken deduction is drawn therefrom. At common law a plea had to go to the whole declaration or cause of action; otherwise on demurrer thereto the plaintiff would be entitled to judgment. (*Hickok* v. *Coates,* 2 Wend. 419.) Therefore, a defense which would merely reduce the plaintiff's recovery could not be pleaded. The only way to take advantage of such defense was under the general issue, which was far broader than our general denial. To prevent surprise in such cases the courts required that with the plea of the general issue special notice of the facts relied on for the recoupment be given. But whether notice was requisite or not depended on whether the recoupment only diminished the plaintiff's claim or defeated it. If the latter, notice was not necessary, but the defense could be made under the general issue. (*Gleason* v. *Clark,* 9 Cow. 57; *Barber* v. *Rose,* 5 Hill, 76.) Therefore, at common law the defendant in this case would have been entitled to prove its defense under the general issue. In reality this discussion is unnecessary, for the common-law system of pleading has been abolished by the Code, and now by its express provisions a partial defense may be pleaded. (Code Civ. Pro. § 508.)

The answer seems plainly good under the terms of the Code. By section 500 an answer should contain any new matter constituting a defense or counterclaim in ordinary and

concise language without repetition.   The plaintiff declares on a covenant in a contract by which on the completion of the work it was entitled to recover a specified sum.   The defendant answered by setting forth another clause of the contract by which, on a certain contingency, the plaintiff was to relinquish the very sum for which it sues and the occurrence of that contingency.   I am at a loss to see why under any system of pleading the defense is not good on its face.   Nor can I see how the plaintiff is in any way injured by so holding, even if, as alleged on the argument, the defendant has brought a cross suit for damages.   Whichever suit is tried first will be conclusive of the whole controversy, for the defendant can recover its damages only once, no matter in which action they may be allowed.

The judgment should be reversed and a new trial granted, with costs to abide the event.

EDWARD T. BARTLETT, WERNER and HISCOCK, JJ., concur with CHASE, J. ; GRAY and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J.

Judgment affirmed.